**No. 14-41085**

*In The*

# United States Court of Appeals

*for the*

# Fifth Circuit

JONATHAN ADAMS THOMAS,

*Plaintiff-Appellant,*

v.

JEH JOHNSON,
Department of Homeland Security,

*Defendant-Appellee.*

_____

*On Appeal from the United States District Court of Texas, Laredo,
The Honorable Marina Garcia Marmolejo, United States District Judge
USDC No. 5:12-CV-106*

## PETITION FOR REHEARING EN BANC

GARY M. GILBERT, ESQ.
Email: gary@ggilbertlaw.com
STEPHANIE M. HERRERA, ESQ.
Email: sherrera@gilbertlaw.com
MEGHAN A. DROSTE, ESQ.
Email: mdroste@ggilbertlaw.com
THE LAW OFFICES OF
GARY M. GILBERT & ASSOCIATES, P.C.
1100 Wayne Avenue, Suite 900
Silver Spring, Maryland 20910
(301) 608-0880

*Attorneys for Plaintiff-Appellant
Jonathan Adams Thomas*

# CERTIFICATE OF INTERESTED PERSONS

The case number is 14-41085. The case is styled as *Thomas v. Johnson*.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Appellant:

> Jonathan Adams Thomas

Appellee:

> Jeh Johnson, U.S. Secretary for Homeland Security, in his official capacity

Appellant's Attorneys:

> Gary M. Gilbert
> Meghan A. Droste
> Stephanie M. Herrera
> The Law Offices of Gary M. Gilbert & Associates, P.C.
> 1100 Wayne Avenue, Suite 900
> Silver Spring, MD 20910
>
> Ari M. Wilkenfeld
> The Wilkenfeld Law Group
> 1726 Connecticut Avenue, NW, Suite 200
> Washington, DC 20009

Appellee's Attorneys:

> Kenneth Magidson, U.S. Attorney
> Virgil Hank Lewis, Assistant U.S. Attorney
> U.S. Department of Justice

U.S. Attorney's Office
Southern District of Texas
800 N. Shoreline Boulevard, Suite 500
Corpus Christi, TX 78401


Respectfully submitted,

/s/ Gary M. Gilbert
Gary M. Gilbert, Esq.
The Law Offices of Gary M. Gilbert
& Associates, P.C.
1100 Wayne Avenue, Suite 900
Silver Spring, MD 20910
Phone: (301) 608-0880
Facsimile: (301) 608-0881
Email: gary@ggilbertlaw.com

Dated: July 16, 2015          *Counsel for Appellant*

## STATEMENT OF COUNSEL

I believe, based on a reasoned and studied professional judgment, that the Panel decision is contrary to the following Supreme Court decisions: *Tolan v. Cotton*, 134 S. Ct. 1861 (2014) and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). I believe, based on my reasoned and studied professional judgment, that this appeal involves questions of exceptional importance: 1) whether the Panel so departed from the guidance of the Supreme Court on the standard for summary judgment so as to be in conflict with the law espoused in *Tolan*; and 2) whether the Panel relied upon Fifth Circuit precedent that conflicts with the Supreme Court's holding in *Reeves*.

/s/ Gary M. Gilbert
Gary M. Gilbert, Attorney for Appellant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF ISSUES ...................................................................... 1

STATEMENT OF THE COURSE OF PROCEEDINGS AND
DISPOSITION OF THE CASE ...................................................... 1

STATEMENT OF FACTS ...................................................................... 2

ARGUMENT ...................................................................................... 5

I.    Contrary to *Tolan*, the Panel Failed to Credit Thomas'
Evidence and Improperly Dismissed the Importance of the
Inconsistent Statements Made By the Interns ...................... 5

    A.    The Panel failed to credit evidence that Thomas was
not present at the hazing ............................................. 5

    B.    The Panel improperly dismissed the importance of the
clear differences in the witness statements ................. 8

II.    Contrary to *Reeves*, the Panel Improperly Held That Evidence
of the Falsity of the Agency's Reason for Terminating
Thomas Was Insufficient to Survive Summary Judgment .................. 9

CONCLUSION .................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Casarez v. Burlington N./Santa Fe. Co.*,
193 F.3d 334 (5th Cir. 1999) .......................................................................11

*Haverda v. Hays County*,
723 F.3d 586 (5th Cir. 2013) ..........................................................................7

*In re Placid Oil Co.*,
932 F.2d 394 (5th Cir. 1991) ..........................................................................7

*Ladd v. Cockrell*,
311 F.3d 349 (5th Cir. 2002) ..........................................................................7

*Leonard v. Dixie Well Serv. & Supply, Inc.*,
828 F.2d 291 (5th Cir. 1987) ..........................................................................7

*Mayberry v. Vought Aircraft Co.*,
55 F.3d 1086 (5th Cir. 1995) ........................................................................10

*Reeves v. Sanderson Plumbing Products, Inc.*,
530 U.S. 133 (2000)................................................................9, 10, 11, 12

*Richardson v. Prairie Opportunity, Inc.*,
470 Fed. Appx. 282 (5th Cir. 2012) .............................................................11

*Thomas v. Johnson*,
No. 14-41085 (5th Cir. June 2, 2015)....................................................*passim*

*Tolan v. Cotton*,
134 S. Ct. 1861 (2014)..........................................................................5, 6, 8

*U.S. v. Williams*,
264 F.3d 561 (5th Cir. 2001) ..........................................................................7

*Valderaz v. Lubbock County Hosp. Dist.*,
No. 14-10761, 2015 WL 3877788 (5th Cir. June 24, 2015) ................... 5-6, 7

*Waggoner v. City of Garland, Tex.*,
987 F.2d 1160 (5th Cir. 1993) ......................................................................10

## STATEMENT OF ISSUES

1. The Panel credited the recollections of witnesses presented by the moving party and drew factual inferences that were contrary to the evidence presented by Appellant Jonathan Thomas ("Thomas"), and in doing so failed to follow Supreme Court precedent that at the summary judgment stage all inferences must be drawn in favor of the non-moving party.

2. The Panel held that Thomas must prove that the Department of Homeland Security ("the Agency") acted in bad faith and that the evidence that Thomas was not present at the hazing was insufficient to prove pretext despite Supreme Court precedent that a trier of fact may infer discrimination from the falsity of an employer's proffered non-discriminatory reason.

## STATEMENT OF THE COURSE OF PROCEEDINGS
## AND DISPOSITION OF THE CASE

Thomas filed his original Complaint in the United States District Court, Southern District of Texas, Laredo Division, bearing Civil Action No. 5:12-cv-00106, on June 18, 2012.  (ROA.12)  The presiding judge was the Honorable Marina Garcia Marmolejo.  (ROA.1)

On May 22, 2014, the District Court granted the Motion for Summary Judgment of Defendant Jeh Johnson, Department of Homeland Security.  (ROA. 2766)  The District Court denied Thomas' Motion to Alter or Amend Judgment on September 2, 2014.  (ROA.3061)

1

Thomas timely filed his Notice of Appeal on October 2, 2014.  (ROA.3089)
The Court entered its decision affirming the District Court's grant of summary
judgment on June 2, 2015.  *See Thomas v. Johnson*, No. 14-41085 (5th Cir. June 2,
2015).

### STATEMENT OF FACTS

On April 13, 2010, three Border Patrol Agents ("BPAs") (ROA.1393) hazed
Border Patrol Agent-Interns ("BPA(I)s") Ulises Moreno and Rene Galarza at the
Highway 16 Checkpoint in Hebbronville, Texas.  (ROA.1390-92)  Thomas'
partner led the hazing.  (ROA.1627, ROA.1783)  Five other BPA(I)s later joined
the hazing at the direction of a fourth BPA.  (ROA.1395, ROA.1777-81)  As a
result of the hazing, BPA(I)s Moreno and Galarza were hospitalized.  (ROA.165 at
¶¶ 30-32, ROA.1390-91)  The injuries BPA(I) Moreno sustained during the hazing
were severe; he "could have died" because his "kidney was about to fail."
(ROA.2129-30)  Nearly one year after the hazing, the Agency suspended the BPAs
who led the hazing.  (ROA.1559-65)

BPA(I)s Moreno and Galarza, who had been Agency employees for one day
prior to the hazing (ROA.1390), reported to Agency investigators that during the
hazing, a "dark colored" or "black African American" made comments about
BPA(I) Galarza's tattoos.  (ROA.1431, ROA.1599)  Although he remained fully
clothed during the hazing, BPA(I) Galarza also reported these comments included

a reference to a tattoo of an Aztec calendar on his back.  (ROA.1431, ROA.1755)

BPA(I) Galarza further stated that the same agent asked him if he was a "Mara."[1]

(ROA.1392, ROA.1431-32)  The Agency considered these comments "racial and

derogatory."  (ROA.1873)  Because the BPA(I)s alleged that the agent who made

the comments was "dark colored" or African American, the Agency identified

Thomas, the only African American assigned to the Hebbronville Station, as the

person who made the purportedly "racial" comments.[2]  (ROA.1133, ROA.1431,

ROA.1599)

BPA(I)s Moreno and Galarza did not independently identify Thomas by

name and neither BPA(I) identified Thomas in a color photo lineup.  (ROA.1400,

ROA.1785-86, ROA.1909)   When asked to name or describe all of the agents and

interns present at the hazing,[3] none of the five other interns who joined the hazing

identified Thomas or stated that an African American or "dark colored" employee

was present.  (ROA.1796, ROA.1803, ROA.1813, ROA.1831, ROA.1842)  These

five interns, who had been on duty for several months (ROA.1777), and the three

BPAs who led the hazing all provided sworn statements that they did not hear any

comments about tattoos during the hazing.  (ROA.1796, ROA.1806, ROA.1817-

---

[1] Mara Salvatrucha, also known as MS-13, is a gang associated with individuals from El Salvador.  (ROA.1500)
[2] BPA(I) Galarza stated that he did not believe the comments were connected to his race. (ROA.1771, ROA.1785)
[3] The interns were asked to "provide the names of *all* Field Training Officers (FTO) or Border Patrol Agents (BPA) and other interns present during the April 13, 2010, [hazing]."  (ROA.1792) (emphasis added)

18, ROA.1834, ROA.1845, ROA.1787-88)  Thomas' partner also reported that he did not see Thomas at the hazing.[4]  (ROA.1787)  Ultimately the Internal Affairs ("IA") agents who interviewed Thomas described him as "credible" with regard to his statements about his location at the time of the hazing (ROA.1933), and IA concluded that no one placed Thomas at the hazing.  (ROA.1928)

Despite the sworn statements of eight Agency employees who denied hearing comments about tattoos, the sworn statements of six[5] Agency employees who did not place Thomas or any African American agent or intern at the hazing, the failure of both BPA(I) Moreno and BPA(I) Galarza to identify Thomas as the "dark colored" or African American agent who made the "racial" comments, and the conclusions of the IA investigation, the Agency terminated Thomas for lack of candor on October 25, 2010.  (ROA.1958-59)  The Agency based its determination that Thomas lacked candor on the "witness accounts" that placed him at the hazing.  (ROA.1959)

---

[4] During the Equal Employment Opportunity Commission administrative hearing in this matter, Thomas' partner on the day of the hazing also testified that he was "certain" that he did not see Thomas at the hazing.  (ROA.1086)
[5] The investigators only asked one of the three BPAs who led the hazing whether Thomas was present.  (ROA.2273-76, ROA.2397-98)

# ARGUMENT

I.    **Contrary to *Tolan*, the Panel Failed to Credit Thomas' Evidence and Improperly Dismissed the Importance of the Inconsistent Statements Made By the Interns.**

   A.    **The Panel failed to credit evidence that Thomas was not present at the hazing.**

The Panel, contrary to the summary judgment standards set out by the Supreme Court, improperly credited the testimony presented by the moving party when it concluded that the record contained "no evidence of disparate treatment."[6] *See Thomas v. Johnson*, No. 14-41085, slip op. at 4 (5th Cir. June 2, 2015).  In *Tolan v. Cotton*, which originated in the Southern District of Texas and was appealed to the Fifth Circuit, the Supreme Court "intervene[d] . . . because the opinion below reflect[ed] a clear misapprehension of summary judgment standards in light of [the Court's] precedents." *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014). The Court found that "the Fifth Circuit failed to view the evidence at summary judgment in the light most favorable" to the non-moving party. *See id.* at 1866. "By failing to credit evidence that contradicted some of its key factual conclusions, the court improperly 'weigh[ed] the evidence' and resolved disputed issues in favor of the moving party." *See id.* at 1866; *see also Valderaz v. Lubbock County Hosp. Dist.*, No. 14-10761, 2015 WL 3877788, at *11 (5th Cir. June 24,

---

[6] The Panel correctly followed the district court's finding that Thomas established a *prima facie* case, and focused its analysis on the evidence of pretext. *See Thomas*, No. 14-41085, slip op. at 4.

2015) (Dennis, J., dissenting) (citing *Tolan*, 134 S. Ct. 1861) ("The rules of summary judgment require that we credit this evidence of . . . the non-movant, as the Supreme Court has recently reminded us.").  In particular, the Supreme Court held that summary judgment is not appropriate when there are genuine disputes based on the "perceptions, recollections, and even potential biases" of witnesses. *See Tolan*, 134 S. Ct. at 1868.

As in *Tolan*, the *Thomas* Panel failed to "credit evidence that contradicted some of its key factual conclusions." *See Tolan*, 134 S. Ct. at 1866.  In reviewing the evidence in the instant appeal, the Panel had before it Thomas' sworn statements and testimony, the sworn statements of the five interns who did not observe Thomas at the hazing, the testimony of Thomas' partner who was "certain" that he did not see Thomas at the hazing, and the sworn statements of all the interns and BPAs who participated in the hazing and did not hear the "racial" comments purportedly made by a "dark colored" or "black African American" agent.  *See* Brief for Plaintiff-Appellant at 9-18; *id.* at 24-25.  However, in restating the facts, the Panel made no reference to the statements of the eight participants in the hazing that directly contradicted the statements of BPA(I)s Moreno and Galarza.  *See Thomas*, No. 14-41085, slip op. at 2.  The Panel's omission of the evidence Thomas presented is precisely what the Supreme Court cautioned against in *Tolan*.  Rather than credit the testimony of these witnesses—all of whom had

served as Agency employees and law enforcement officers for longer than BPA(I)s Moreno and Galarza—who did not observe Thomas at the hazing or hear any of the comments the "dark colored" or African American agent purportedly made, and whose testimony negates any assertion that Thomas was present at the hazing, the Panel did not address these facts.[7]  *See id.*

Despite the sworn statements of the eight Agency employees, the Panel concluded that the statements of BPA(I) Moreno and Galarza were merely a "misidentification" and that a misidentification "is not a lack of candor."  *See id.* at 5.  Although this characterization might be appropriate if the BPA(I)s had confused Thomas for another African American agent or intern, there is simply no evidence that any African American employee was present.  (ROA.1796, ROA.1803, ROA.1813, ROA.1831, ROA.1842)  Rather than credit the evidence of the non-moving party—which shows that Thomas was not present at the hazing—the Panel improperly credited the evidence of the moving party.

---

[7] Determinations regarding the credibility of Thomas, the Agency employees who did not see him at the hazing, and the two injured interns, are not appropriate at summary judgment.  *See Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013) ("[A] court must draw all reasonable inferences in favor of the nonmoving party and *may not make credibility determinations* or weigh the evidence.") (emphasis added); *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991) (A judge may not draw inferences that "involve issues of witness credibility or disputed material facts."); *see also Valderaz*, No. 14-10761, 2015 WL 3877788, at *9 (Dennis, J., dissenting) ("[I]t falls to the jury to listen to the witnesses, believe whom it will, and rule accordingly."); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291 (5th Cir. 1987) ("The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed; it is for the jury at trial, not for the judge on a pretrial motion, to decide whose evidence is more credible.") *cf. Ladd v. Cockrell*, 311 F.3d 349, 356 (5th Cir. 2002) (citing *U.S. v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (Credibility is a "question of fact," which "'turns heavily on demeanor and other issues not discernible from a cold record.'") (internal citation omitted).

7

**B.    The Panel improperly dismissed the importance of the clear differences in the witness statements.**

The Panel further deviated from the plain guidance of *Tolan* when it dismissed the importance of the different and contradictory statements made by the two interns as "the product of different recollections or experiences." *See Thomas*, No. 14-41085, slip op. at 5.  The different "perceptions, recollections, and potential biases" of witnesses is, as the Supreme Court reaffirmed in *Tolan*, one of the reasons that genuine disputes of material facts are not resolved by summary judgment. *See Tolan*, 134 S. Ct. at 1868.  Due to the Agency's reliance on the "witness accounts" that purportedly placed Thomas at the hazing (ROA.1959), the different and contradictory statements of the eight Agency employees and those of BPA(I)s Moreno and Galarza create a genuine dispute of material fact that may only be resolved at trial, and not at summary judgment. [8]  In light of these genuine factual disputes and the competent evidence Thomas presented, it was inappropriate for the Panel to affirm the district court's grant of summary judgment and denial of Thomas' Motion to Alter or Amend Judgment.

---

[8] The dispute created by the testimony of those present at the hazing is without doubt material, as it goes directly to the motivation of the decision maker.  (ROA.1958-59)

**II.     Contrary to *Reeves*, the Panel Improperly Held That Evidence of the Falsity of the Agency's Reason for Terminating Thomas Was Insufficient to Survive Summary Judgment.**

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Supreme Court held that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *See Reeves*, 530 U.S. at 148. In the *Reeves* district court proceedings, Sanderson asserted that it terminated Reeves "because he had 'intentionally falsif[ied] company pay records.'" *See id.* at 144. Reeves also testified that on the day of his termination, his employer stated that "his discharge was due to his failure to report as absent one employee . . . on two days in September 1995." *See id.* at 145. At trial Reeves "offered evidence that he had properly maintained the attendance records." *See id.* at 144. He also testified that he was in the hospital on the days in question in September 1995. *See id.* at 145. The jury returned a verdict for Reeves and the district court denied Sanderson's motion for judgment as a matter of law. *See id.* at 139.

The Fifth Circuit reversed the district court, holding that Reeves had not introduced sufficient evidence to sustain the jury's verdict. *See id.* Although this Court agreed that a reasonable jury could have concluded that the reasons for Reeves' termination were pretextual, it held that was "insufficient to sustain the

jury's finding of liability." *See id.* at 146. Upon review, the Supreme Court found that the Fifth Circuit had "misconceived the evidentiary burden borne by plaintiffs who attempt to prove intentional discrimination through indirect evidence." *See id.* The Supreme Court held that "[p]roof that the defendant's explanation is unworthy of credence . . . is probative of intentional discrimination, and it may be quite persuasive." *See id.* at 147. The Court explained that "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *See id.* (emphasis in original). Ultimately the Court concluded that Reeves had introduced "enough evidence for the jury to reject [Sanderson's] explanation . . . ." *See id.* at 153-54.

As in *Reeves*, the *Thomas* Panel misconstrued Thomas' evidentiary burden. In its decision, the Panel held that the evidence that Thomas was not present at the hazing and that his statements were truthful was insufficient to establish pretext. *See Thomas*, No. 14-41085, slip op. at 4 (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)). The Panel concluded that "Thomas was required to show not only that the determination was wrong, but also that it was reached in bad faith." *See id.* (citing *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993)). In doing so, the Panel relied upon an incorrect formulation, drawn from cases decided pre-*Reeves*, that no longer stands post-*Reeves*.

Thomas, like Reeves, produced evidence that directly contradicted his employer's stated reason for his termination.  *See supra* Part I.A; *see also* Brief for Plaintiff-Appellant at 9-18; *id.* at 24-25.   Reeves testified that he did not falsify records; Thomas testified, and produced the sworn testimony of credible witnesses, that he was not present at the hazing.  *See Reeves*, 530 U.S. at 144-45; Brief for Plaintiff-Appellant at 9-18; *id.* at 24-25.  The Supreme Court's decision in *Reeves* does not require that an employee, in addition to proving that his employer's reason for terminating him is false, further establish that the employer relied upon its stated reasons in bad faith.  Rather, *Reeves* permits a trier of fact to infer discrimination if the employer's reason—such as falsification of records or providing false statements—is undermined by the evidence.  *See Reeves*, 530 U.S. at 147.  The Panel did not cite to any Fifth Circuit decision post-*Reeves*[9] that supported the outmoded evidentiary burden it imposed on Thomas.[10]  *See Thomas*,

---

[9] The burden the Panel imposed on Thomas is also inconsistent with at least one of this Court's pre-*Reeves* decisions.  *See Casarez v. Burlington N./Santa Fe. Co.*, 193 F.3d 334, 337 (5th Cir. 1999) (reversing the grant of judgment as a matter of law in part because the plaintiff "offered evidence sufficient to show that [the defendant] could not have been motivated by the reasons [it] gave for firing [plaintiff] because those reasons were groundless").

[10] Although it has not explicitly rejected the "bad faith" evidentiary burden, it appears that this Court no longer imposes it post-*Reeves*.  In the unpublished decision in *Richardson v. Prairie Opportunity, Inc.*, 470 Fed. Appx. 282 (5th Cir. 2012), the Fifth Circuit, relying on *Reeves*, reversed the district court's grant of summary judgment.  *See id.* at 286.  In support of its motion for summary judgment, Prairie presented evidence that it terminated Richardson because he used threatening words and gestures towards a supervisor.  *See id.* at 283-84; *id.* at 285-86.  Richardson presented testimony that his words and gestures were non-threatening.  *See id.* at 286.  This Court concluded:

No. 14-41085, slip op. at 4.  The Panel's finding that Thomas failed to present sufficient evidence to survive summary judgment contradicts the standards the Supreme Court set forth in *Reeves*.  A trier of fact could have inferred discrimination based on the evidence Thomas, the non-moving party, presented that established that the Agency's determination regarding his candor was "unworthy of credence."  *See Reeves*, 530 U.S. at 147.

## CONCLUSION

For the foregoing reasons, Thomas requests that the opinion and judgment of the Panel be vacated, and that the Court reverse the final judgment of the district court.

/s/ Gary M. Gilbert, Esq.
  Gary M. Gilbert, Esq.

*Attorneys for Plaintiff-Appellant*
*Jonathan Adams Thomas*

---

That evidence was sufficient to create a genuine dispute on the truth of Prairie's proffered explanation.  It, along with the evidence Richardson presented in making his *prima facie* case, would permit a trier of fact to infer intentional discrimination.  *Reeves*, 530 U.S. at 147, 120 S. Ct. 2097.  Therefore, summary judgment against Richardson's discrimination claim was improper.

*Id.*

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-41085

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2015

Lyle W. Cayce
Clerk

JONATHAN ADAMS THOMAS,

> Plaintiff - Appellant

v.

JEH JOHNSON, Department of Homeland Security,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, OWEN, HIGGINSON, Circuit Judges.

REAVLEY, Circuit Judge:

This case involves a Title VII claim arising out of Appellant Jonathan Adams Thomas's termination from his position with the Department of Homeland Security as a probationary Border Patrol Agent. The district court granted summary judgment in favor of the government, Thomas's employer, and we affirm.

Thomas was a probationary Border Patrol agent with the Department of Homeland Security. On April 13, 2010, Thomas and his partner diverted from their assigned patrol area to visit a Border Patrol checkpoint ("the Checkpoint"). Thomas did not ask his partner why they were straying from the assigned area, and his partner did not tell him. That day at the

No. 14-41085

Checkpoint, a pair of brand new recruits were subjected to brief but intensive workouts that resulted in injuries. There was a question about the probability that the recruits had been subjected to objectionable hazing. Accordingly, all Border Patrol agents at the Checkpoint that day were required to submit memoranda addressing the incident. In pertinent part, Thomas wrote:

> When we arrived at the checkpoint, I was introduced to the new interns and then went inside to check my government email. I did not witness and [was] unaware of anything that went on outside of the checkpoint.

Video evidence showed Thomas had not been in the Checkpoint building long enough to check his e-mail and a subsequent forensic scan provided corroborating, but not conclusive, evidence that he had not checked his e-mail. Additionally, the injured probationary agents, or interns, told investigators that an African American agent had needled one of them about certain tattoos and suggested they indicated gang affiliation. Thomas was the only African American agent at the Checkpoint that day, and he was therefore investigated for possible lack of candor and racist statements.

Thomas was suspended from active duty during the investigation, whereupon he elected to submit a second, unsolicited memorandum that repeated the version of his conduct as in the first memorandum and described his own PT experiences upon first entering service as a Border Patrol agent. After ICE investigators concluded that no criminal conduct had occurred at the Checkpoint, Thomas's case was transferred to Internal Affairs and assigned to John Berent. Berent interviewed Thomas, who told him the previously submitted memoranda were "factually accurate" but clarified that while he had originally "decided to" check his e-mail, he then "decided not to" after entering the building and realizing no one was there. Berent "closed" his investigation with a report favorable to Thomas. He reported that neither of the interns had identified Thomas in a photo line-up and that both testified to a belief that the

comments regarding tattoos were not racially motivated. Further, the report indicated Thomas had "provided additional information to address the candor concern."

Notwithstanding the favorable report, Thomas's supervisor, Chief Rosendo Hinojosa terminated Thomas's employment on October 25, 2010 for "lack of candor." Chief Hinojosa found Thomas' assertion that he knew nothing of the physical training exercises "nothing short of incredible" and further found his "assertion that [he] responded to the checkpoint without knowing a reason for leaving [his] assigned position in the field [] incredible." He also noted how Thomas' story had shifted with respect to the original claim that he had checked his e-mail during the time of the physical training.

After exhausting his remedies with the EEOC, Thomas filed this lawsuit alleging he had been unlawfully terminated because of his race and color. The government moved for summary judgment. Reasoning that Thomas had shown no evidence that the given reason for his termination, lack of candor, was pretextual, the district court granted the motion. Thomas appealed.

"We review a district court's grant or denial of summary judgment *de novo*, applying the same standard as the district court." *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007).

A plaintiff lacking direct evidence of race- or color-based discrimination may yet prevail in a Title VII case by providing circumstantial evidence sufficient to raise an inference of discrimination. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). In such cases, courts apply the *McDonnell Douglas* burden-shifting framework. *See id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973)).

Under this framework, the plaintiff must make a *prima facie* showing of discrimination. *Id.* Once the showing is made, a presumption of discrimination arises, and the employer must "articulate a legitimate, non-

discriminatory reason" for the adverse employment action. *See id.* at 557. The burden then shifts back to the plaintiff, who must show the articulated reason is pretextual. *Id.*

We will assume, as the district court found, that Thomas carried his initial burden of establishing a *prima facie* case of discrimination. *See Britt v. Grocers Supp. Co.*, 978 F.2d 1441, 1450 (5th Cir. 1992). Based on Chief Hinojosa's termination letter citing "lack of candor," the government has asserted a legitimate, non-discriminatory reason for Thomas's termination. *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

"A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Thomas argues that the given reason for his termination (lack of candor) is false or unworthy of credence because he was, strictly speaking, truthful at all times. He also argues he has presented evidence of disparate treatment.

Thomas argues that the factual dispute over whether he *actually* lacked candor necessarily means he has shown pretext. This argument is foreclosed. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). Thomas was required to show not only that the determination was wrong, but also that it was reached in bad faith. *See Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993). He has not done so.

Further, there is no evidence of disparate treatment. Thomas contends that the other *probationary* Border Patrol agents who were present at the Checkpoint on April 13, and who participated in the physical training exercises, also lacked candor, either because they misidentified him or because they gave accounts inconsistent in varying ways. This is not evidence of

pretext. A misidentification is not a lack of candor and inconsistent stories can be the product of different recollections or experiences. Thomas was the only probationary Border Patrol agent who gave an easily falsifiable story that was seemingly falsified and was the only agent that changed and refined his story—emphasizing a trip "inside" when it seems to give him an alibi regarding what happened "outside," then explaining away as insubstantial the entire substance of his initial memo when questioned further. Even more, Thomas was the only probationary Border Patrol agent who was thought to have been involved in the physical training incident and not as a participant. The conduct of the other probationary Border Patrol agents was not "nearly identical" and does not provide a basis for finding disparate treatment. *See Vaughn*, 665 F.3d at 637. Significantly, Thomas admits that one of the other probationary Border Patrol agents was also terminated by Chief Hinojosa for lack of candor regarding an unrelated topic, which cuts against Thomas's claim that lack of candor was merely pretext with respect to his termination.

Finally, Thomas asserts that he was similarly situated to *permanent* Border Patrol agents who were present at the Checkpoint on April 13 and who, like Thomas, denied knowing anything about the hazing incident. As a matter of law, Thomas (an intern) is not similarly situated with permanent Border Patrol agents. The D.C. Circuit has "held that [federal] probationary employees and permanent employees are not similarly situated," because "under federal regulations, probationary employees may be terminated for problems even if those problems would not be good cause for terminating a permanent employee." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). Our own unpublished cases are in accord. *Lewis v. Jefferson Parish Hosp. Serv. Dist. No. 2*, 562 F.App'x 209, 212 (5th Cir. 2014) (finding employees not similarly situated where one was fired during her "probationary period" and the permanent employee had different job responsibilities); *Jones v. Am.*

*Airlines, Inc.*, 100 F.3d 953 (5th Cir. 1996) (per curiam) ("The non-probationary employees to whom [plaintiff] points were not similarly situated because they were protected by collective bargaining agreements, they had different supervisors, and they had different employment records."). Other Circuits agree. *See Green v. New Mexico*, 420 F.3d 1189, 1195 (10th Cir. 2005) (finding employees not similarly situated where, among other things, the asserted comparators were not probationary employees); *Steinhauer v. DeGolier*, 359 F.3d 481, 484–85 (7th Cir. 2004) ("Purifoy and Steinhauer were not similarly situated because Steinhauer was still on probation while Purifoy was not."); *Bogren v. Minnesota*, 236 F.3d 399, 405 (8th Cir. 2000) ("[T]roopers beyond the probationary period are not similarly situated to a probationary trooper."); *Blanding v. Pennsylvania State Police*, 12 F.3d 1303, 1309–10 (3d Cir. 1993) ("Probationary troopers have traditionally been terminated more readily . . . than non-probationary troopers.").

It is undisputed that Thomas was a probationary employee entitled to less procedural protections and a different disciplinary scheme than permanent employees. Chief Hinojosa testified that, when dealing with probationary employees, "just about any disciplinary action would lead to [] termination." Moreover, the Code of Federal Regulations provides probationary employees such as Thomas "shall" be "terminate[d]" if the intern "fails to demonstrate fully his qualifications for continued employment." 5 C.F.R. § 315.803. The difference between the Border Patrol agents' employment status accounts for their difference in treatment, and they are not similarly situated. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

The district court's grant of summary judgment is AFFIRMED.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 16, 2015, a true and correct copy of the foregoing Petition for Rehearing En Banc were served via electronic filing with the Clerk of Court and all registered ECF users.

Virgil H. Lewis
Email: virgil.lewis@usdoj.gov
U.S. Attorney's Office
Southern District of Texas
800 North Shoreline Boulevard
Suite 500
Corpus Christi, TX 78401
(361) 888-3111

Dated: July 16, 2015

/s/ Gary M. Gilbert, Esq.
Gary M. Gilbert, Esq.
*Counsel for Appellant*